[Civ. No. 8805. Second Appellate District, Division Two.—June 2, 1933.]

WALTER N. ANDERSON et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[Civ. No. 8821. Second Appellate District, Division Two.—June 2, 1933.]

BENJAMIN FRANKLIN BOND AND INDEMNITY CORPORATION (a Corporation), Petitioner, v. E. FORREST MITCHELL, Commissioner of Insurance, etc., Respondent.

F. E. Davis, Edward V. Jones and Milton H. Silverberg for Petitioners.

Everett W. Mattoon, County Counsel, Fred M. Cross, Deputy County Counsel, and Frank L. Guerena for Respondents.

WORKS, P. J.—In each of these proceedings the writ of mandate is demanded. In each, upon presentation of petition therefor, and *ex parte*, an alternative writ was issued. The two proceedings may be determined by a single opinion. Throughout the opinion petitioner Benjamin Franklin Bond and Indemnity Corporation will be referred to as the Bond Company.

In the first proceeding, Civil No. 8805, it is alleged in the petition that the Bond Company exists for the purpose, "among others, of making, guaranteeing or becoming a surety" on bonds and undertakings, and that it had, prior to July 1, 1932, "fully complied with all the requirements of the law" of California regulating its formation and its right to transact business within the state, and that, since the date mentioned, it has regularly done business therein; that petitioner Anderson has been appointed a notary public and that it is necessary for him to qualify himself for the office by giving bond to be approved by a judge of respondent court; that on July 1, 1932, respondent insurance commissioner issued to the Bond Company the certificate of authority to do business provided for by law; that on November 9, 1932, the insurance commissioner "undertook to and did issue an order of suspension and revocation of said certificate of authority" and that he gave due publicity thereto; that on the last-mentioned date the Bond Company commenced in respondent court an action against the insurance commissioner, and five days later filed an amended and supplemental complaint in the action, all "under section 631 of the Political Code . . . for the purpose of cancelling the said action of the commissioner in issuing, filing and circulating the said order of suspension and revocation". Section 631 of the Political Code reads, so far as it is material here, as follows: "If at any time the insurance commissioner revokes the certificate of authority theretofore granted to any insurance company, any interested person or company may commence an action against the insurance commissioner for the purpose of reviewing the facts and the law pertinent to the controversy and for the purpose of obtaining the relief refused or for canceling the action of the commissioner. In any such action the court shall have full power to investigate all of the facts *de novo* without regard to the determinations previously made by the commissioner."

A copy of the amended and supplemental complaint is made part of the petition in this proceeding, and it is alleged in the petition that due service of the pleading was made upon the insurance commissioner, service of summons and of the complaint theretofore having been made, and that the action is still pending and undetermined.

It is also alleged that on November 16, 1932, the Bond Company issued to petitioner Anderson a bond, in the amount required by law, to qualify him as a notary public, that the same was presented to a judge of respondent court for his approval but that the judge refused and still refuses to approve it, and that he "will, unless compelled so to do, now and continuously hereafter 'pending final determination by the courts of such controversy' refuse to approve any and all bonds or undertakings issued by the" Bond Company. Speaking with reference to the action above mentioned it is alleged in the petition that "all of the allegations in the original and supplemental complaints or petitions on file therein are true; that no notice or publication as required by section 1056 of the Code of Civil Procedure was ever given or made, and the liabilities of the said plaintiff, Benjamin Franklin Bond and Indemnity Corporation, have never exceeded and do not now exceed its assets; it has never conducted and does not now conduct its business fraudulently, but is carrying out and always has carried out its contracts in good faith and has been guilty of no act, thing or deed, either as specified in section 596b of the Political Code or otherwise or at all, that would justify the suspension or revocation of its said certificate of authority; and said plaintiff Benjamin Franklin Bond and Indemnity Corporation has never been cited to show cause why its certificate of authority should not be suspended or revoked either as provided by said section 596b of the Political Code or otherwise or at all". It is further alleged that "the said action of the said insurance commissioner in suspending and revoking said certificate of authority was taken wholly without notice, citation, publication, justification or excuse whatsoever, but was done and taken extra-judicially and without probable cause and with malicious intent".

It was and is now the theory of the Bond Company that, because of the action begun by it against the insurance commissioner in respondent court, its right to do business in California has been restored, and that, therefore, it is entitled to the mandate of this court in effect undoing what the commissioner did in issuing the alleged order of suspension and revocation, and to that end requiring respondent court hereafter to approve bonds or

undertakings issued by the Bond Company. This theory is based upon language of section 633d of the Political Code, which, after referring to actions "against the insurance commissioner for the purpose of reviewing the facts pertinent to the controversy and for the purpose of obtaining relief or cancelling the act of the insurance commissioner", reads "Pending final determination by the courts of such controversy, the right of the company or other insurer whose license to do business in the state of California has been revoked or suspended, shall remain unimpaired."

To the petition in Civil No. 8805 respondents presented return that the only "order" made by the insurance commissioner, affecting the Bond Company and derogating from the certificate of authority issued to it by him on July 1, 1932, was in the form of a letter, copy of which was addressed to the county clerk of every county in the state. The body of this widely circulated letter reads: "In pursuance of the provisions of section 625a of the Political Code of the state of California, this is to certify that the certificate of authority to transact in this state the business of fidelity and surety insurance, heretofore granted to ·Benjamin Franklin Bond and Indemnity Corporation, has been suspended as provided in section 1056 of the Code of Civil Procedure of California." This letter was dated November 10, 1932. Section 625a of the Political Code reads in part as follows: "Whenever the certificate of authority of any such corporation to do business in this state shall for any reason be surrendered, revoked, cancelled or annulled, or whenever the said certificate of any such corporation has been suspended as provided in section one thousand fifty-six of the Code of Civil Procedure of this state . . . the insurance commissioner of this state shall forthwith certify to the county clerk of each county in this state the name of such corporation, and the date of such surrender, revocation, cancellation, annulment or suspension. . . . "

It is unnecessary here to set down any of the allegations of the petition in Civil No. 8821. The two proceedings are much alike as to questions presented, were set down for hearing together, were so heard and were briefed together. It is proper to note, however, that in response to allegations in the petition in Civil No. 8821, somewhat similar to those contained in the petition in Civil No. 8805, respondent

Mitchell, who is not a party respondent in the last-named proceeding, in his answer and return "denies that a purported examination was made by respondent of petitioner's financial condition and affairs, and denies that a purported deficiency was found by respondent; and in this connection respondent alleges that subsequent to July 1, 1932, respondent actually examined the financial condition and affairs of petitioner and found an actual excess of liabilities over assets in the sum of $190,795.09", and he also admits the allegations of a certain paragraph of the petition "except that the deficiency was a purported deficiency, and alleges that the notice by respondent to petitioner to pay up the deficiency in sixty (60) days was given by respondent in accordance with the direction of section 1056 of the Code of Civil Procedure of the state of California".

Upon the return day petitioners offered no evidence whatever. Respondents offered and the court received in evidence a lengthy report, of date October 8, 1932, to the insurance commissioner, signed by one designated as "Principal Examiner" and approved by one styled "Supervising Examiner." This report relates to the financial standing of the Bond Company, includes a mass of figures, is accompanied by a number of pertinent exhibits and ends with this conclusion: "On the basis of this examination and of the financial statement herein presented, the company's capital stock was impaired on July 31, 1932, to the extent of at least $190,795.09, and may in fact be impaired to a still greater extent determinable only upon findings with respect to which the foregoing report contains specific reservations."

No mention of any revocation or suspension of authority to do business, strictly and properly so called, is made in section 1056 of the Code of Civil Procedure. However, in both sections 631 and 633d of the Political Code a revocation or suspension of authority is referred to, and it is in connection with the mention in the latter that a suit against the insurance commissioner to test the "controversy" is provided for, although such a suit is also mentioned in section 631. No such suit is suggested in section 1056 of the Code of Civil Procedure. It will be observed, also, that section 625a of the Political Code, the material portion of which is quoted above, draws a distinction between pro-

cedure under section 1056 of the Code of Civil Procedure and other procedure authorized by law, this by means of the few lines of the section beginning with the words "or whenever" and ending with the mention of that code. It will be seen that section 1056 provides for the very course indicated by the report made to the insurance commissioner by his examiners in the present instance. Section 1056 reads in part "that the insurance commissioner shall have the same jurisdiction and powers to examine the affairs of such corporations as he has in other cases; shall require them to file similar statements and issue to them a similar certificate. And whenever the liabilities of any such corporation shall exceed its assets, the insurance commissioner shall require the deficiency to be paid up in sixty days, and if it is not so paid up, then he shall issue a certificate showing the extent of such deficiency, and he shall publish the same once a week for three weeks in a daily San Francisco paper."

These proceedings are apparently made complex because of the fact that the legislature has tied together section 1056 of the Code of Civil Procedure, providing for a publication, after the lapsation of sixty days, in a San Francisco newspaper, and section 625a of the Political Code, providing for letters to the county clerks of the state, but this apparent complexity is far from real. This is because the newspaper notice and the letters to the county clerks were intended by the legislature for the protection of the public. Whether the notice was given is a point which is of no interest to petitioners. The Bond Company was duly notified to make good the deficiency in its assets, and whether or not the newspaper notice was published is a wholly immaterial matter here. The material situation, at the present moment, is that the action taken by the insurance commissioner was pursuant to section 1056 of the Code of Civil Procedure, and because of a deficiency in the assets of the Bond Company, and not under the terms of section 633d of the Political Code, as will hereafter more fully be shown.

Section 633d of the Political Code, a lengthy and complex enactment, prescribes various rules for the guidance of those organizations, among them such as the Bond Company, which are subject under the law to the juris-

diction of the insurance commissioner. After laying down these rules, and after making provision for investigations by the commissioner for the purpose of ascertaining whether they have been infringed, the section contains this language: "Any insurance company or other insurer wilfully violating or failing to observe and comply with any of the provisions of this section, applicable thereto, shall be guilty of a misdemeanor and punishable by a fine of not exceeding five hundred dollars for each violation thereof, or the insurance commissioner may revoke the license of such company or other insurer for the remainder of the term covered by such license." Following this excerpt comes the provision, already mentioned, for the institution of suits by aggrieved insurance companies for the purpose of procuring a judicial determination as to the correctness of revocations or suspensions of license imposed by the commissioner—as the section puts it, "for the purpose of obtaining relief or cancelling the act of the insurance commissioner". It is during the pendency of a suit thus, and by this authority, commenced, that the right of a company to do business "shall remain unimpaired", to state with brevity a portion of the section which has been set forth more specifically in an earlier part of this opinion.

We think the Bond Company leans upon a broken reed in ascribing the force it does to the language of section 633d of the Political Code to the effect that, pending a determination of a certain suit, the right of such a company to do business in the state "shall remain unimpaired". We think such a suit is authorized by the section merely to test the rightness of action of the insurance commissioner based upon the matters proscribed by section 633d itself. These are matters of infraction of specific inhibitions of the section—specific "don'ts", if it pleases—which companies may not infringe continuously and with impunity. When it comes to the inhibitions of section 1056 of the Code of Civil Procedure the situation is totally different. The settlement of the matters there touched upon cannot, and the legislature intended they should not, await the comparatively tardy determination of a court of justice. ■ When a company suffers its liabilities to exceed its assets, summary action must be somewhere possible in order to halt the immense damage likely to result from its continu-

ance in the business of giving surety bonds. It would be most unwise to allow this danger to be revived by the mere bringing of an action at law. The necessity for the giving and maintenance of binding and enforceable—or realizable—surety bonds goes hand in hand with the due administration of justice itself. No one can say that the power to take summary steps in such matters, reposed in the insurance commissioner by section 1056, is ill-placed or that the legislature in so placing it acted inadvisedly or unconstitutionally. We should here assert, for we have omitted the remark thus far, that section 1056 provides, in terms, that until an ascertained deficiency in assets is paid up, ''such company shall not do business in this state''. This one provision stands effectually in opposition to the argument of petitioners. Certainly, to our minds, the Bond Company, under the facts here, is not protected by the clause in section 633d of the Political Code upon which it so confidently relies.

Much of what we have said above is a repetition of matter contained in an opinion rendered by us in the two proceedings some time ago. At the conclusion of our former opinion we rendered judgment in each proceeding that the alternative writ of mandate be vacated and that a peremptory writ be denied. A petition for a rehearing of both proceedings was presented by petitioners and it was granted.     The rehearing was allowed to the end that we might give due consideration to the claim that section 1056 of the Code of Civil Procedure is unconstitutional because parties situated as is the Bond Company now are denied due process of law under it. In presenting the claim petitioners rely upon *Porter* v. *Investors' Syndicate,* 286 U. S. 461 [52 Sup. Ct. 617, 76 L. Ed. 1226]. We think, however, that the situation exhibited by that case is very different from the one presented here. There a state commissioner, acting administratively and not judicially, had attempted to prescribe certain rules affecting the conduct of businesses which were in progress under permits which had been previously ·issued by him. The rules were designed to modify the nature· of such businesses, and therefore to affect profits, without opportunity to be heard, and a statute of the state forbade a resort to the courts as a corrective after the rules were announced and

before they took effect, but allowed the corrective only after final judgment to be rendered after the harm had been done. It is true that section 1056 of our Code of Civil Procedure does not provide for notice before the taking of such action as was taken by the insurance commissioner in the instance now before us, but the order of suspension issued by him, if his course be considered as an order of suspension, could not take effect under the statute short of sixty days after it was promulgated, for the section provides, and the order required, that the deficiency in the Bond Company's assets be made good within that period. The fact that the Bond Company was accorded due process of law under the laws of the state is evident from the institution and progress of the very proceedings which now engross our attention. Petitioners in the two present proceedings invoked the writ of mandate as a means whereby to halt what they considered as the headlong course of the commissioner, and alternative writs of mandate were issued upon *ex parte* presentations. Upon return to the writs an issue was presented as to whether the commissioner's action was supported by the evidence adduced before him. As we have already shown, evidence was presented to us upon but one side of this question. This evidence furnished an ample support for the ruling of the commissioner. The Bond Company has had its day in court and it has not been denied, but has been fully accorded, due process of law under the statutes of the state.

In each Civil No. 8805 and Civil No. 8821, the alternative writ of mandate is vacated and a peremptory writ is denied.

Stephens, J., concurred.